United States District Court

District of Massachusetts

```
_____
                                   )
Joanne Walsh,                      )
                                   )
         Plaintiff,                )
                                   )
    v.                             )    Civil Action No.
                                   )    22-10453-NMG
HNTB Corporation,                  )
                                   )
         Defendant.                )
                                   )
_____
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from allegations that defendant, HNTB Corporation ("HNTB" or "defendant") constructively terminated plaintiff, Joanne Walsh ("Walsh" or "plaintiff"), because of her age in violation of both the Age Discrimination in Employment Act, 29 U.S.C. § 621-34 ("ADEA") and M.G.L. c. 151B, § 4. Walsh also claims a breach of the covenant of good faith and fair dealing.

Pending before the Court is defendant's motion for summary judgment (Docket No. 34). For the reasons that follow, the motion will be allowed.

I.  **Background**

Walsh was employed at HNTB from January, 1994 until she resigned in September, 2020 at the age of 55.  She maintains, and her employer vigorously denies, that her resignation resulted from a constructive discharge.  Her employment as a Technology Support Representative II involved a range of IT support functions for HNTB customers.  Walsh was purportedly content with her position and did not seek promotion to the next level of Technology Support Representative III.

The events leading to Walsh's resignation began when Walsh received her 2018 performance review which stated that she "met expectations" but "at the lowest in the range."  Her 2019 performance review reported that she "inconsistently met expectations."  In August, 2019, Walsh was placed on a Performance Improvement Plan ("PIP") purportedly to improve issues concerning "responsiveness, pushback, upkeep of the technical room, and lease returns."  Walsh maintains that she was placed on a PIP to force her to resign because of her age.

The PIP term was 90 days and ended in November, 2019. While the parties dispute the precise dates, at about that time Danny Vealey ("Vealey") became Walsh's supervisor, replacing her former supervisor, James Clark ("Clark").  Vealey worked with Walsh throughout the PIP period and was satisfied that she met the goals of that program.

After completion of the PIP, Walsh remained in her same position with the same pay but the parties dispute whether she retained the same job responsibilities. Plaintiff asserts that Clark reported that she "barely improved enough to get off the PIP."

In September, 2020, Walsh resigned from HNTB. Defendant maintains that Walsh was not about to be terminated but she insists she was being pushed out. Her colleague with the same job title, Lindsay Allinson, also resigned on the same day. Allinson was then 62 years old.

Walsh's departure created an immediate vacancy. According to plaintiff, an individual in his 30s was scheduled to replace her but ultimately, her job was filled by Amr Kaliouby who, at the time, was 53 years old.

Walsh contends that during the period leading up to her resignation, management made her life difficult and she felt she had no choice but to resign. One year and five months later, plaintiff filed the instant suit alleging that she was constructively terminated on the basis of her age in violation of federal and state law.

II.  **Motion for Summary Judgment**

   **A. Legal Standard**

   The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

   A fact is material if it "might affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

   If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is

appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B. Analysis

#### 1. Federal and State Claims of Age Discrimination

Discrimination based on age is impermissible under both ADEA and M.G.L. c. 151B, § 4. The standards applied for age discrimination claims under federal law and Massachusetts state law are so similar that both claims can be analyzed together. Tombeno v. FedEx Corp. Servs., Inc., 284 F.Supp.3d 80, 86 (D. Mass. 2018) (citing Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir. 2014)).

Where, as here, an employee lacks direct evidence that an employer's actions were motivated by animus, courts apply the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Haddad v. Wal-Mart Stores, Inc., 914 N.E.2d 59, 66 (Mass. 2009) (citing McDonnell Douglas Corp., 411 U.S. at 802).

Under that framework, 1) plaintiff must establish a prima facie case of discrimination, 2) defendant may rebut that case by offering a legitimate, nondiscriminatory reason for its employment action, which would then require plaintiff 3) to produce evidence demonstrating that defendant's stated reason

was a pretext. Haddad, 914 N.E.2d at 66 n.14; Ingram v. Brink's, Inc., 414 F.3d 222, 230 (1st Cir. 2005).

To establish a prima facie case of discrimination, plaintiff must demonstrate that

> (1) [she is] a member of a protected class; (2) [she is] qualified for [her] job; (3) [she] suffer[ed] an adverse employment action at the hands of [her] employer; and (4) [there is] some evidence of a causal connection between [her] membership in a protected class and the adverse employment action.

Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313 (1st Cir. 2016) (quoting Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 70 (1st Cir. 2011)).

Once a prima facie case has been stated, the burden shifts to defendant to rebut the presumption of discrimination by offering a legitimate, nondiscriminatory reason for its employment action. See Blare v. Husky Injection Molding Sys. Boston, 646 N.E.2d 111, 115 (1995). If defendant does so, plaintiff must then adduce evidence demonstrating that defendant's stated reason was pretextual. Id. at 116-17.

Defendant asserts that plaintiff cannot state a prima facie case because 1) she was performing below expectations 2) she did not suffer an adverse employment action but, rather, resigned and 3) her position was ultimately filled by someone similar in age.  Because the Court agrees that plaintiff did not suffer an adverse employment action, it finds that plaintiff has not

stated a prima facie case and will, for the following reasons, allow summary judgment for defendant.

The parties do not dispute that on September 11, 2020, Walsh resigned from her position at HNTB. Plaintiff contends, however, that her resignation resulted from a constructive discharge because 1) she was relieved of certain duties 2) the workplace environment was intolerable and 3) she would have been terminated anyway.

To establish a claim of constructive discharge, plaintiff must demonstrate that

> conditions were so intolerable that they rendered a seemingly voluntary resignation a termination.

Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 50 (1st Cir. 2008). In its inquiry, this Court must assess whether the working conditions were

> so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign.

Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000). It is insufficient to show merely that a plaintiff "suffered the ordinary slings and arrows that workers routinely encounter in a hard, cold world." Torrech-Hernandez, 519 F.3d at 50.

The First Circuit Court of Appeals ("the First Circuit") has also endorsed the doctrine that constructive discharge can be proved by demonstrating that an employer has acted in a

manner that signals to a reasonable employee that she will be terminated. Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 96-97 (1st Cir. 2018). Thus, if an employee is "told repeatedly that she is not wanted and has no future" with the organization, the Court can infer a constructive discharge. Id. (emphasis in original).

### a. Demotion

Defendant maintains that plaintiff was never demoted nor were her pay or responsibilities reduced.

Plaintiff agrees that her pay was not reduced and she was not formally demoted but asserts that her team leader and later manager, Vealey, relieved her of several job duties that she had performed throughout her career.

Walsh cites her deposition in which she attested that Vealey "started taking over things that we were working on...[h]e made it look like he was in charge" but neglects to finish the quote which also states, "if a project started to go sideways, all of a sudden it was back in our lap." That testimony undermines the assertion that plaintiff's responsibilities were reduced.

Plaintiff also asserts that she was required to refer some customer issues to Vealey, but such a minor shift in oversight does not amount to constructive discharge. As the First Circuit has explained,

> [a] reduction in responsibility...unaccompanied by diminution of salary or some other marked lessening of the quality of working conditions

is not a constructive discharge. Suarez, 229 F.3d at 55.

### b. Hostile Work Environment

Walsh also contends that she was constructively discharged as a result of an abusive workplace environment. As evidence, she cites: 1) comments by Vealey that she could "be replaced by younger, cheaper people" and that the company was "not getting its return investment" on her, 2) Clark refused to provide her with information on why her performance was purportedly lackluster and later told her to "shut up" and "stop asking" and 3) Clark told her that "she barely improved enough to get off the PIP."

HNTB responds that Walsh's evidence amounts to stray comments and, in any event, occurred 10 months or more prior to her resignation.

To establish a claim of constructive discharge plaintiff needs to adduce evidence of conditions "so onerous, abusive, or unpleasant" that a reasonable person would have felt compelled to resign. The Court notes that there is conflicting evidence as to when Vealey and Clark actually supervised plaintiff but, even attributing the offending remarks to her supervisor at the time, she has not supported a claim for constructive discharge

on the theory of a hostile workplace based on the current record.

Vealey's purported comment that Walsh could "be replaced by younger, cheaper people" and that the company was "not getting its return investment" on her may indeed evince age-related animus. Clark's comments, which included telling plaintiff to "shut up", were certainly rude, intended to reflect frustration with Walsh and could be interpreted as contributing to establish a hostile workplace.

The fact that these comments were made 10 months or more prior to plaintiff's decision to resign, however, severely undermines plaintiff's assertion that the workplace environment was so hostile that she has "no real choice but to resign." Suarez, 229 F.3d at 56. The temporal distance between those comments and the date of plaintiff's resignation suggests that plaintiff had the choice to resign and chose to stay. See Landrau-Romero v. Banco Popular de Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000) ("If a plaintiff does not resign within a reasonable time period after the alleged harassment, he was not constructively discharged.").

### c. Termination

Finally, the First Circuit has recognized that constructive discharge claims can be established by demonstrating that plaintiff would have been discharged had she not resigned.

Here, there is no genuine question of material fact that Walsh's employment was not in imminent jeopardy.

The parties agree that Walsh was never expressly told or asked to leave HNTB. Furthermore, the evidence establishes that plaintiff's remedial PIP period ended more than 10 months before she resigned. The lapse of time between the bulk of the disparaging comments made to her and the date of her resignation seriously impairs her claim. That plaintiff successfully completed the remedial process with her job intact also suggests that her job security was not immediately threatened. She definitely was not "told <u>repeatedly</u> that she is not wanted and has no future." <u>See</u> <u>Rivera-Rivera</u>, 898 F.3d at 97 (emphasis in original).

The Court concludes that there is no credible evidence that plaintiff was constructively terminated. Because she has not demonstrated that she suffered an adverse action at the hands of HNTB, Walsh cannot state a prima facie case for age-discrimination.[1] Summary judgment on the claims pursuant to ADEA and M.G.L. c. 151B, § 4 will be granted to defendant.

---

[1] This Court is unpersuaded by plaintiff's argument that her placement on a PIP was an adverse employment action. Walsh successfully completed the PIP period and thereafter she was neither demoted nor her pay reduced and any changes in her responsibilities were de minimis.

### 2. Breach of Implied Covenant of Good Faith

Finally, defendant moves for summary judgment on plaintiff's claim for breach of the implied covenant of good faith and fair dealing.  This Court's conclusion that plaintiff was not constructively terminated vitiates any such claim. See McCone v. New England Telephone and Telegraph Co., 471 N.E.2d 47, 49 n.7 (Mass. 1984).

Furthermore, the exclusivity provision in Chapter 151B casts significant doubt as to plaintiff's ability to bring a common law claim for a purportedly discriminatory termination. See M.G.L. c. 151B, § 9 ("[A]s to acts declared unlawful by section 4, the administrative procedure provided in this chapter, shall, while pending, be exclusive"); see also Laureano v. Legal Sea Foods, LLC, 2013 WL 5587949, at *3 (D. Mass. Oct. 9, 2013).  Accordingly, summary judgment will be entered for defendant.

### ORDER

For the foregoing reasons, the motion of defendant, HNTB Corporation, for summary judgment (Docket No. 34) is, as to all counts, **ALLOWED.**

**So ordered.**

    /s/ Nathaniel M. Gorton  
    Nathaniel M. Gorton  
    United States District Judge

Dated:  December 21, 2023